STATE OF NEBRASKA, APPELLEE, V. LUIS GARCIA, APPELLANT.

345 N.W.2d 826

Filed March 9, 1984.   No. 83-505.

Avis R. Andrews, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The defendant was charged in a two-count information with delivery of marijuana weighing more than 1 pound and conspiracy to deliver a controlled substance, both Class III felonies providing for possible punishment by imprisonment of from 1 to 20 years. Following a jury trial, the defendant was convicted on both counts and was sentenced to consecutive sentences of imprisonment of from 5 to 8 years.

Although defendant's assignments of error are six in number, they may be stated generally in four parts: (1) The court erred in failing to sustain defendant's motion to suppress evidence; (2) The court erred in failing to find as a matter of law that defendant was entrapped into committing the crimes charged; (3) The verdicts were not sustained by sufficient evidence and therefore defendant's motion to dismiss should have been sustained; and (4) The sentences imposed were excessive. We affirm as modified.

The State's principal witnesses were a cooperating individual of the Fremont Police Department and police officers and Dodge County sheriff's deputies. The cooperating individual testified that he worked through a Harry Mildrexler, a codefendant of Luis Garcia. This witness further testified that he helped Mildrexler find a house to rent in Fremont so that he could get some marijuana from California and sell it. Through conversations with Mildrexler it was learned that a friend of his in California, the defendant Luis Garcia, was to bring in between 50 and 100 pounds of marijuana. Although the witness was present on several occasions when Mildrexler would talk to Garcia about the coming shipment, he denied that he ever talked to Garcia on the phone or otherwise during these negotiations.

After being advised that Garcia was to arrive in Nebraska on January 13, 1983, the witness called the Dodge County sheriff's office and verified that Gar-

cia was on the plane and on his way with something in a bag. The cooperating individual then testified that he and Mildrexler picked up Garcia at the airport in Omaha, using a car which the Fremont Police Department had furnished him. He opened the trunk of this car, and Mildrexler and Garcia placed Garcia's suitcases inside. Eventually the three of them drove to Fremont. The witness got out of the car and walked away, whereupon Mildrexler and Garcia were arrested.

According to the testimony of police Det. Sgt. Stephen Tellatin, Garcia and the codefendant were transported to the Fremont Police Department. Tellatin obtained the cooperating individual's permission to search the trunk of his automobile, where the two suitcases belonging to Garcia were found. This police officer then testified that he obtained the consent of Garcia to open the suitcases, and in each one marijuana was found. Police officer Jim Burkardt later testified that immediately following Garcia's arrest he was given his full *Miranda* warnings.

It was on the basis of the foregoing testimony that the defendant was tried and convicted.

Prior to trial the defendant filed motions to suppress all evidence seized from the trunk of the automobile, items seized from a search of the defendant's luggage, and evidence of statements made by the defendant to police officers following his arrest. The trial court overruled all three motions because, first, as to all three motions, they were not filed at least 10 days before trial as required by Neb. Rev. Stat. § 29-822 (Reissue 1979); that as to the search of the automobile, the defendant had no standing to object to that search because he did not have custody, control, or an ownership interest in the same, and he had consented to a search of his luggage; and, finally, that he had been advised of his *Miranda* rights and had voluntarily made such statements.

The motions were not filed 10 days before trial of

the case began. However, there is some indication that trial might have commenced earlier than anticipated because of a previously set jury case having been canceled. In any event, the other reasons given for overruling the motions were valid.

The search of the trunk of the automobile was proper. Sergeant Tellatin, among others, testified that he had reliable information that the defendant was going to bring marijuana into Nebraska on this date. Surveillance was maintained on the defendant's baggage by various law enforcement authorities in San Diego and in Denver, and by Tellatin at Omaha as he watched Mildrexler and Garcia pick up the baggage and place it in the trunk of the automobile in the charge of the cooperating individual.

Additional testimony indicated that this automobile was then followed back to Fremont by Dodge County Deputy Sheriff Dan Weddle and police Det. Thomas Tamke. It is apparent from this testimony that probable cause existed to make the arrest of Garcia and to search the trunk of the automobile without the necessity of a warrant. See *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), *reh'g denied* 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94. In any event, permission was obtained from the person who had charge of the automobile to search the trunk, as previously indicated.

The search of the defendant's luggage itself is, of course, another matter. However, the court concluded, after considering all of the evidence, that the defendant had voluntarily given his consent to that search. Detective Tamke testified that he was present when Sergeant Tellatin asked the defendant for his permission to search the luggage. According to Tamke, the defendant stated, "You'd get a search warrant anyway, so go ahead." Sergeant Tellatin testified to essentially the same facts, and denied that he had ever told the defendant that if he did not give permission he would get a search warrant. The defendant himself testified that at first he re-

fused permission to Sergeant Tellatin, but after the officer told him that he would get a search warrant if permission was not granted, the defendant stated that he said, "Well, you have them, so you don't need nothing. Go ahead and do whatever you want to do."

The determination of whether a consent to search is voluntarily given is a question of fact. *State v. Skonberg*, 194 Neb. 550, 233 N.W.2d 919 (1975). The voluntariness of the consent to search should be determined from the totality of the circumstances surrounding it. *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975). The findings of fact in this respect will not be set aside on appeal unless they are clearly erroneous. In making that determination this court will take into consideration the advantage of the district court in having heard the oral testimony. *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981). In this instance the findings of the district court cannot be said to be clearly erroneous.

The evidence clearly indicates that the defendant was advised of his *Miranda* rights and voluntarily made his statements to the authorities. The defendant does not argue in this court to the contrary. The trial court was correct in overruling the motions to suppress.

As to the defendant's claim of entrapment, the trial court gave as one of its instructions to the jury NJI 14.34. This instruction clearly and fairly sets forth the elements of entrapment and the fact that the burden is on the State to prove that the defendant was not improperly induced to commit the crime. Although the defendant testified that he was asked by the cooperating individual on three or four occasions to bring the marijuana into Nebraska, as previously stated, this individual specifically denied having ever talked to the defendant. A question of fact on this issue was fairly presented to the jury, which resolved it against the defendant.

The defendant's argument as to the insufficiency

of the evidence is based on his claim that he at no time had possession of the marijuana in Dodge County. In support of this argument he points to the fact that after placing his luggage in the trunk of the automobile, which was in the possession of the cooperating individual, the latter had the only key to the trunk, which placed that luggage beyond the control of the defendant. The testimony of the defendant himself does establish that he bought the marijuana in California, brought it into Nebraska in his suitcases, placed them in the trunk of the automobile, expected to have the suitcases returned to him when he got out of the car, and expected to sell the marijuana and to make a profit from that sale.

Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession. *State v. Britt*, 200 Neb. 601, 264 N.W.2d 670 (1978).

Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the substance at the time of the arrest or by a showing of dominion over the substance. *State v. Sotelo*, 197 Neb. 334, 248 N.W.2d 767 (1977).

The fact that the defendant would have to ask the one in charge of the automobile to unlock the trunk for him did not detract from the defendant's dominion over his luggage. As the owner of that luggage, he had every legal right to insist on its return to him, much as he would in the event that he had checked it at a check stand. Constructive possession may be proven by ownership, dominion, or control over the contraband itself, coupled with the intent to exercise control over the same. *United States v. Salinas-Salinas*, 555 F.2d 470 (5th Cir. 1977); *Sewell v. United States*, 406 F.2d 1289 (8th Cir. 1969). The evidence was sufficient to sustain the verdict of the jury.

As to the claimed excessiveness of his sentence, the defendant points to the facts that Mildrexler, pursuant to a plea bargain, was successful in having the count involving possession dismissed, and was sentenced to a term of imprisonment of from 30 months to 6 years. Mildrexler's presentence investigation report discloses that his prior criminal record includes a conviction and sentence of from 1 to 3 years' imprisonment for delivery of a controlled substance, a 14-day jail sentence coupled with 2 years 50 weeks of probation for conspiracy to deliver a controlled substance, and a $300 fine for possession of a controlled substance. The defendant's prior record contains a conviction for reckless driving and an arrest for possession of marijuana of less than 1 ounce.

We recognize that Mildrexler's conviction was the result of an agreement involving a plea of guilty on his part. However, we cannot overlook the facts that he was as deeply involved in this crime as was the defendant, save only that the latter actually physically delivered the contraband, and that the defendant's prior record was rather clean by comparison. Accordingly, to impose a sentence of from 30 months to 6 years in the one instance and two consecutive terms of from 5 to 8 years in the defendant's case constitutes impermissible disparity of sentences for nearly similar criminal activity. *State v. Komor*, 213 Neb. 376, 329 N.W.2d 120 (1983).

The sentence of the trial court is modified to require that the two terms of imprisonment run concurrently.

AFFIRMED AS MODIFIED.